1

2

3

4

5                    IN THE UNITED STATES DISTRICT COURT

6                  FOR THE NORTHERN DISTRICT OF CALIFORNIA

7

8    JOCELYN JONES and JOHN JONES,            No. C 06-00717 SI

9                Plaintiffs,                   **ORDER DENYING DEFENDANTS'**
                                               **MOTION FOR SUMMARY JUDGMENT**
10      v.

11   ST. PAUL TRAVELERS, et. al.,

12              Defendants.
     _____/
13

14          On June 22, 2007, the Court heard oral argument on defendants' motion for summary judgment.

15   Having considered the arguments of counsel and the papers submitted, the Court hereby DENIES

16   defendants' motion for the reasons set forth below.

17

18                                    **BACKGROUND**

19          On or about March 6, 2001, plaintiff Jocelyn Jones suffered the loss of a portion of her arm while

20   operating machinery at her workplace. Pls.' Resp. to Uncontroverted Facts ¶ 16. On or about March

21   3, 2003, plaintiffs filed a personal injury suit in Georgia against defendants' insured, Watkins Engineers

22   & Constructors, Inc., ("Watkins") for negligent maintenance of the machine that caused plaintiff's

23   injury. *Id.* ¶¶ 23, 24. By letter dated April 23, 2003, Len Baumann at Marsh Risk & Insurance Services,

24   informed St. Paul of plaintiffs' personal injury suit and provided St. Paul with a copy of the complaint.

25   *Id.* ¶ 26. Mr. Baumann noted that the complaint could not be prosecuted against Watkins due to the

26   company's bankruptcy proceeding. *Id.* ¶ 26. This was the first notice St. Paul received about plaintiff's

27   accident. *Id.* ¶ 27.

28          On November 22, 2004, plaintiffs obtained a default judgment against Watkins for $3.3 million.

*United States District Court*
*For the Northern District of California*

**United States District Court**
For the Northern District of California

*Id.* ¶ 45.  Plaintiffs subsequently obtained a sister-state judgment in San Francisco Superior Court on October 14, 2005 for $3,507,879.06.[1]  *Id*. ¶ 46.

In the instant action, plaintiffs seek to recover the judgment against Watkins from St. Paul under California Insurance Code §11580.[2]  Plaintiffs assert a bad faith claim against defendants, alleging that defendants "unreasonably refused and persisted in their unreasonable refusal, to pay a judgment against the insured."  Supp. Compl. ¶ 17.  Plaintiffs also allege defendants' "refusal" to pay the judgment against Watkins was done "fraudulently, oppressively, maliciously, and in conscious disregard of plaintiffs' rights," and that plaintiffs are, therefore, entitled to punitive damages.  *Id.* ¶¶ 17, 22.

Two insurance policies are relevant to the instant motion:  policy number KG08300906 ("St. Paul policy") and policy number DCHI1998 ("Integrated Risk policy").  The St. Paul policy was issued by St. Paul Fire and Marine Insurance Company to Watkins' parent company, Dillingham Construction Holdings, Inc. ("Dillingham"), with effective dates of November 1, 2000 to November 1, 2001.  Pls.' Resp. to Uncontroverted Facts ¶ 1.  The policy contains an endorsement titled, "'What To Do If You Have A Loss' For a Self Insured Retention," which provides:

> If an accident or incident happens that may involve liability protection that applies over a self-insured retention under this policy, you or any other protected person involved must: . . . 2) Tell your claim handling service or our agent what happened as soon as possible.  Do this even though no demand for damages has been made against you or any other protected person, but you or another protected person is aware of having done something that may later result in a demand for damages . . . 5) Tell us as soon as possible of all accidents and incidents involving any of the following: . . . Traumatic loss of or surgical amputation of limb.

*Id.* ¶ 47.  St. Paul was also a participating insurer in Watkins' excess coverage program which included the Integrated Risk policy with effective dates November 1, 1998 to November 1, 2001.  *Id.* ¶ 4.  The Integrated Risk policy provides under Third Party Liability:

> 2) Notice of Claim: The Insured's Director of Risk Management shall, as soon as practicable, give written notice to GAB Robins, Sacramento, or to any other person or organization designated by Insurers, of any claim or claims to which this part applies

---

[1]  The sister-state judgment is greater in value due to interest.

[2]  California Insurance Code § 11580 provides, in relevant part, "[W]henever judgment is secured against the insured or the executor or administrator of a deceased insured in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment." Cal. Ins. Code § 11580.

1

2

which may exceed 50% of the applicable deductibles or self-insured retentions as shown in the Schedule of Deductibles or the underlying amounts as set forth in the Schedule of Underlying Policies.

3

*Id.* ¶ 48.  The Integrated Risk policy further provides under General Policy Terms & Conditions:

4

5

6

7

1) Notice to Insurers: The Named Insured's Director of Risk Management shall, as soon as practicable, upon knowledge of a loss likely to give rise to a claim under this policy, give written notice thereof to GAB Robins, Sacramento, or to any other person or organization designated by Insurers to investigate, negotiate, adjust, or settle such claims.  If claim is made or suit is brought against the Insured, the Insured shall as soon as practicable forward every demand, notice, summons, or other paper received by the Named Insured's Director of Risk Management.

8

*Id.* ¶ 49.

9

10

**LEGAL STANDARD**

11

12

13

14

15

16

17

18

19

Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P. 56(c).  In a motion for summary judgment, "[if] the moving party for summary judgment meets its initial burden of identifying for the court those portions of the materials on file that it believes demonstrate the absence of any genuine issues of material fact, the burden of production then shifts so that the non-moving party must set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial."  *See T.W. Elec. Service, Inc., v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317 (1986)).

20

21

22

23

24

25

26

27

In judging evidence at the summary judgment stage, the Court does not make credibility determinations or weigh conflicting evidence, and draws all inferences in the light most favorable to the non-moving party. *See T.W. Elec.*, 809 F.2d at 630-31 (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986)); *Ting v. United States*, 927 F.2d 1504, 1509 (9th Cir. 1991).  The evidence presented by the parties must be admissible.  *See* Fed. R. Civ. P. 56(e).  Conclusory, speculative testimony in affidavits and moving papers is insufficient to raise genuine issues of fact and defeat summary judgment.  *See Thornhill Publ'g Co., Inc. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979).

28

**United States District Court**
For the Northern District of California

**DISCUSSION**

**I.    Coverage Under the St. Paul Policy and Integrated Risk Policy**

It is uncontested that Watkins did not notify St. Paul of plaintiff Jocelyn Jones' injury until April 23, 2003, almost two years after its occurrence. Pls.' Resp. to Uncontroverted Facts ¶ 27. It is also uncontested that under both the St. Paul and Integrated Risk policies, timely notice was a condition of coverage. *Id.* ¶¶ 47, 48, 49.

The parties dispute whether California or Georgia law applies to the issue of coverage under the two policies. Defendants contend that Georgia law applies and that there is no coverage under the policies because of Watkins' failure to timely notify St. Paul of plaintiff's accident. *See Equitable Life Assur. Soc. of U.S. v. St-Denis*, 77 F.3d 412, 415 (11th Cir. 1996) ("Timely notice to the insurer of a claim or occurrence is a condition precedent to the insurer's duty to defend or pay.") (quoting *Insurance Co. of No. Am. v. Waldroup*, 462 F. Supp. 161, 162 (M.D. Ga. 1978)). In contrast, plaintiffs argue that California law applies, and that without a showing of actual prejudice, lack of timely notice does not excuse coverage under the policies at issue. *See Campbell v. Allstate Ins.*, 60 Cal.2d 303, 306 (1963) (to excuse obligation to indemnify, insurer must show prejudice "with respect to breach of a notice clause").

In its order dated October 14, 2006, the Court applied a choice of law analysis to plaintiffs' bad faith claim, and determined that California law applied.[3] Here, although the Court must revisit the choice of law analysis for each claim, *see Washington Mut. Bank, FA v. Superior Ct.*, 24 Cal. 4th 906, 920 (2001), the Court finds that the factors again weigh in favor of applying California law. The Court finds that Georgia and California law substantively differ regarding the effect of non-compliance with a notice clause on an insurer's duty to indemnify. The Court also finds that both states have a legitimate

---

[3] In choosing what law to apply, the Court "must apply the choice-of-law rules of the state in which it sits." *Abogados v. AT&T*, 223 F.3d 932, 934 (9th Cir. 2000). California applies a three-part governmental interest test to determine which laws apply. *See Arno v. Club Med Inc.*, 22 F.3d 1464, 1467 (9th Cir. 1994). First the Court determines whether the substantive law of the two states differs. *Id.* If so, the Court examines each state's interest in applying its law to determine if there is a true conflict. *Id.* If each state has a legitimate interest in applying its law, the Court compares the impairment to each jurisdiction under the other state's rule of law. *Id. See also Washington Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 919 (2001) (holding "California follows a three-step 'governmental interest analysis' to address conflict of laws claims and ascertain the most appropriate law applicable to the issues where there is no effective choice-of-law agreement.").

**United States District Court**
For the Northern District of California

1  interest in having their laws applied to the instant matter.  Georgia has an interest in applying its laws

2  to its residents and California has an interest in applying its laws in the state of California.  *See*

3  *Strassberg v. New England Mutual Life Ins. Co.*, 575 F.2d 1262, 1264 (9th Cir. 1978) (holding that "the

4  preference is to apply California law, rather than choose the foreign law as a rule of decision").

5          The Court finds, however, that California would be more impaired by the application of Georgia

6  law to the issue at hand than would be Georgia by the application of California law.  Georgia's interest

7  in protecting its residents and the risks insured in its state would not be impaired by the application of

8  California law because California law would allow plaintiffs, who are Georgia residents, a greater

9  chance at recovery.  Nor are any Georgia insurance companies impaired by the application of California

10  law in this case, as the defendant insurance companies are not Georgia companies.  In contrast,

11  California has a strong interest in applying its laws because California has an interest in protecting third-

12  party beneficiaries who stand in the shoes of the insured via §11580 of the California Insurance Code,

13  and regulating the conduct of insurers operating within the state.[4]  *See Federal Sav. & Loan Ins. Corp.*

14  *v. Transamerica Ins. Co.*, 66 F. Supp. 246, 252 (C.D. Cal. 1987) (recognizing that California has an

15  interest in seeing that its resident businesses behave properly).

16          Defendants contend that *Stonewall Surplus Lines Ins. Co. v. Johnson Controls, Inc.*, 14 Cal. App.

17  4th 637 (1993), requires application of Georgia law in this case; the Court disagrees.  *Stonewall*

18  recognized that parties' expectations are an important factor in a choice of law analysis involving a

19  multiple risk insurance policy.  *Id.* at 646.  There, the underwriting file reflected that the policy at issue

20  would cover risks in many states and world-wide, and that at the time the policies were issued both the

21  insured and insurers "carefully" took into account the "complexity of the corporation's activities."  *Id.*

22  at 648.  Based on that analysis the court concluded that "in reality" the Wisconsin-based insured

23  "obtained separate policies which insure separate risks located in any number of states where the

24

25          [4] The parties dispute whether the St. Paul and Integrated Risk policies were issued in California.
26  Plaintiffs contend that the policies were issued in California, and cite an exhibit attached to the Fitts
   declaration which shows that the policies were mailed by an agent in San Francisco, CA to Dillingham
27  in Pleasanton, CA.  Defendants assert that this is exhibit is not admissible evidence, and that the policies
   were not issued in California.  However, neither party identifies what factors the Court should consider
28  to determine where the policies were issued.  The parties have not submitted any evidence that the
   policies were issued in Georgia, and plaintiffs' evidence at least suggests a connection to California.

United States District Court
For the Northern District of California

corporation does business." *Id.* Given the nature of the risk in question in that case – an injury in California to a California resident caused by a battery manufactured in California – the court determined that California insurance law should apply. *Id.* at 649.

Here, the record does not show that the parties anticipated that Georgia law would apply to risks insured in Georgia, nor does it reflect any underwriting analysis comparable to that evaluated in *Stonewall*. The document submitted by St. Paul from the underwriting file states that Dillingham "conducts substantially all of its operations through its construction subsidiaries which perform a variety of domestic and international construction projects." Wimberly Decl. Ex. 7. There is no reference to Georgia in the exhibit provided by St. Paul.[5] St. Paul has not submitted any evidence suggesting that while negotiating the terms of the insurance policy, either the insurers or the insured contemplated what laws would govern claims under the policy. Furthermore, in *Stonewall*, the court stated that its ruling would not be "appropriate in all cases where an insured's activities expose it to liability in a number of states." 14 Cal. App. 4th at 648 n.7. Here, the record does not support an assumption that the parties anticipated that the laws of the state in which the risk was insured would apply. *See id.*

Accordingly, the Court applies California law, which requires a showing of actual prejudice in order for non-compliance with a notice clause to excuse an insurer's duty to indemnify. In order to show actual prejudice, "an insurer must show it lost something that would have changed the handling of the underlying claim . . . the insurer must show a substantial likelihood that, with timely notice, and notwithstanding a denial of coverage or reservation of rights, it would have settled the claim for less or taken steps that would have reduced or eliminated the insured's liability." *Shell Oil Co. v. Winterthur Swiss Ins. Co.*, 12 Cal. App. 4th 715, 763 (1993). St. Paul has made no effort to show that it was prejudiced by the delayed notification of plaintiff's injury. Absent such a showing, plaintiffs' judgment against Watkins appears to be covered by the St. Paul and Integrated Risk policies. Accordingly, the Court DENIES defendants' motion for summary judgment on the issue of coverage under the St. Paul and Integrated Risk policies.

---

[5] The Court notes that according to the document, Dillingham's subsidiaries appear to operate in, *inter alia*, Hawaii, Oregon and California, as well as the "Southeastern United States." *Id.*

**II.     Validity of the Judgment Against Watkins**

The parties dispute the validity of the default judgment obtained by plaintiffs against Watkins in Georgia.  Defendants contend that the default judgment violated Watkins' due process rights and, therefore, that the judgment is void as a matter of law.  Plaintiffs argue that defendants have no standing to allege due process violations on behalf of Watkins and, furthermore, that unless the underlying Georgia judgment is set aside, plaintiffs have a valid action to enforce their California sister-state judgment.

Defendants argue that plaintiffs' judgment against Watkins does not comport with due process requirements under either Georgia or California law because plaintiffs did not allege a specific amount of damages in their initial complaint.  Defendants contend that Georgia law requires that a "judgment by default shall not be different in kind from or exceed in amount that prayed for in the demand for judgment."  O.C.G.A. § 9-11-54(c)(1).  Defendants further contend that California law requires that relief granted to a plaintiff in a default judgment cannot exceed that which was demanded in the complaint.  *See* Cal. Code Civ. P. § 580 ("The relief granted to the plaintiff, if there is no answer, cannot exceed that demanded in the complaint").

The Court finds that even if defendants have standing to allege a violation of Watkins' due process rights, defendants' argument lacks merit.  As an initial matter, because defendants challenge the validity of the underlying Georgia judgment against Watkins, the Court finds it is appropriate to analyze the question under Georgia due process requirements.  The Georgia Court of Appeals has held that the purpose of O.C.G.A. § 9-11-54(c)(1) is to protect a defendant from being misled about the type or scope of judgment sought by a plaintiff.  *See Floyd v. First Union Nat'l. Bank of Georgia*, 203 Ga. App. 788, 790 (1992); *Orkin Exterminating Co. v. W.L. Townsend*, 136 Ga. App. 50, 52 (1975); *D.B. Dempsey v. V.C. Ellington*, 125 Ga. App. 707, 708 (1972).  The statute does not, however, mandate that a specific amount of damages be alleged in order for a court to award monetary judgment in default.  *See Floyd*, 203 Ga. App. at 789-90.  Rather, the statute requires that a defendant be put on notice of the kind and amount of judgment that will be awarded if the defendant does not answer.  *See Orkin*, 136 Ga. App. at 52.

None of the cases cited by defendants address the specific situation at issue here.  *See, e.g.,*

*Hackbart v. Hackbart*, 272 Ga. 26 (2000) (holding that a trial court erroneously awarded child support in a default judgment where plaintiff had prayed only for divorce, child custody and certain property); *Jayson v. Gardocki*, 221 Ga. App. 455 (1996) (holding that it was unlawful to award attorneys fees in a default judgment when attorneys fees had not been sought in the original petition); *Jones v. Cooke*, 169 Ga. App. 516 (1984) (holding that a default judgment of $901.50 was void where plaintiff had sought only $370); *Orkin*, 136 Ga. App. at 51 (holding that it was unlawful for plaintiff to amend its complaint to increase the demand for judgment on the "same date that plaintiff took a default judgment against defendant"). Here, there was no ambiguity as to the type of relief sought by plaintiffs in the state court personal injury action. Plaintiff Jocelyn Jones alleged that her arm was amputated below the elbow as a result of injuries she sustained while operating a VP-12 Rewinder at her place of work**,** and sought damages for "pain and suffering," "medical expenses, past, present, and future," "diminution of her earning capacity," and "past, present and future lost wages." Underlying Compl. ¶¶ 41, 44, 45, 46, 47. Plaintiff John Jones prayed for loss of consortium. *Id.* ¶ 49. Though a specific dollar amount did not appear in the underlying complaint, the scope of damages sought by plaintiffs was not unclear. The judgment entered in favor of plaintiffs by the Georgia court is not "different in kind" from that prayed for in the complaint, nor does it "exceed in amount" compensation for the injuries described by plaintiffs.

Moreover, Watkins was aware of the severity of plaintiff's injury from the moment it occurred, and agreed to lift the bankruptcy stay to allow plaintiffs' lawsuit against Watkins to proceed. Watkins has not challenged the validity of the judgment against it, and plaintiffs were successful in obtaining a sister-state judgment in California. On this record, the Court finds that defendants have failed to show that plaintiffs' default judgment against Watkins is void as a matter of law and DENIES defendants' motion for summary judgment on this issue.

**III.    St. Paul Travelers Companies, Inc. Relation to the St. Paul and Integrated Risk Policies**

Defendants allege that defendant St. Paul Travelers Companies, Inc. (St. Paul Travelers) is not legally obligated to pay for the judgment obtained by plaintiffs against Watkins because St. Paul Travelers did not issue either the St. Paul policy or the Integrated Risk policy. Plaintiffs assert that

while defendant St. Paul Travelers did not issue the policies in question, St. Paul Travelers merged with the company that did – St. Paul Fire and Marine Insurance Company – and is, therefore, responsible for plaintiffs' judgment against Watkins.

Neither party briefed this issue in great detail.  Plaintiffs point solely to the deposition of a former St. Paul Travelers employee, Catherine Syhre, in which Ms. Syhre replies in the affirmative that there was "a merger of St. Paul and Travelers" on "April 1, 2004."  Soriano Decl., Ex. A at 8. Defendants argue that St. Paul Travelers and St. Paul Fire and Marine Insurance Company are two distinct entities in Minnesota, and cite the Minnesota Secretary of State website which has a separate entry for each entity.  Reply, Ex. 21, 22.

The record before the Court does not provide a sufficient basis to determine the relationship between St. Paul Travelers and St. Paul Fire and Marine Insurance Company, or to answer the related question of whether St. Paul Travelers is a proper defendant.  Consequently, the Court DENIES defendants' motion for summary judgment on this issue.

## IV.    Bad Faith Claim

Defendants contend that Georgia law bars plaintiffs' bad faith claim.  For the reasons stated in the Court's October 14, 2006 order, the Court finds that California law governs this claim, and that plaintiffs may allege such a claim *Hand v. Farmers Ins. Exch.* 23 Cal. App. 4th 1847 (1994).

Defendants also contend that plaintiffs' bad faith claim lacks merit.  Defendants argue that St. Paul has reasonable grounds for denying coverage of the default judgment against Watkins, and that where there is a genuine issue as to the insurer's liability under a policy that there can be no bad faith liability.  Defendants assert that plaintiffs have no evidence to support their allegation that St. Paul withheld payment unreasonably.  Plaintiffs, on the other hand, assert that defendants are not entitled to judgment as a matter of law and that additional evidence continues to result from defendants' alleged continued breach of the implied covenant of good faith and fair dealing.  Furthermore, they argue that after the October 14, 2006 order, defendants' refusal to pay on grounds that *Hand* is not good law can be considered unreasonable because the duty of good faith is a continuing one (citing *White v. Western Tile*, 40 Cal.3d 870, 885 (1985)).

The Court cannot rule as a matter of law that plaintiffs' bad faith claim is without merit. The Court finds that there is a genuine issue of material fact as to whether defendants have acted reasonably. Therefore, the Court DENIES defendants' motion for summary judgment on plaintiffs' bad faith claim.

## V.       Claim for Punitive Damages

Defendants assert that plaintiffs' claim for punitive damages is unrecognized in California, and lacks merit because there is no clear and convincing evidence that St. Paul acted with requisite oppression, fraud or malice.

The Court concludes that even though California Insurance Code §11580 does not explicitly create a judgment creditor action for punitive damages, plaintiffs are not barred from bringing such a claim under California Civil Code § 3294. *See Van Winkle v. Allstate Ins. Co.*, 290 F. Supp. 2d 1158, 1167-68 (C.D. Cal. 2003). Furthermore, the Court declines to rule that a reasonable juror could not find in favor of plaintiffs' claim for punitive damages. At the summary judgment stage, the Court does not make credibility determinations and draws all inferences in the light most favorable to the non-moving party. *T.W. Electric*, 809 F.2d at 630-31. Therefore, the Court DENIES defendants' motion for summary judgment on plaintiffs' claim for punitive damages.

## VI.     Plaintiffs' Evidentiary Objections

### A.       Exhibit 7 Attached to the Wimberly Declaration

Plaintiffs object to Exhibit 7, a copy of background information regarding Dillingham's subsidiaries, operations, projected revenue and current projects, on the grounds that it contains inadmissible hearsay and is irrelevant. The Court OVERRULES the objection. Susan Wimberly declares that she is employed by the Travelers Indemnity Company as a Senior Account Manager with the underwriting department. Wimberly Decl. ¶ 1. She further declares that she is "familiar with, and has access to, the underwriting files relating to the policies issued by St. Paul to Dillingham." *Id.* ¶ 3. Consequently, she appears to have sufficient knowledge regarding the information in Exhibit 7.

10

United States District Court
For the Northern District of California

**B.      Paragraph 6 of the Franke Declaration**

Plaintiffs object to paragraph 6 of the Declaration of Mark Franke which reads, "In May 2003, St. Paul determined that the claims against Watkins were automatically stayed due to the fact that Watkins was in bankruptcy," on the grounds that the statement is not based upon personal knowledge and is impermissible legal opinion.  The Court disagrees, and finds that as an employee of the Travelers Indemnity Company who was responsible for the direct handling of the claim file for the underlying action, Mr. Franke had sufficient personal knowledge about St. Paul's determination regarding the effect of Watkins' bankruptcy proceedings on the underlying action.  The Court disagrees with plaintiffs that Mr. Franke's statement is a legal opinion.  Rather, Mr. Franke is simply stating a fact – which is undisputed by all parties – that the claims against Watkins were automatically stayed due to the bankruptcy, which they were in May 2003.

**CONCLUSION**

For the foregoing reasons, the Court hereby DENIES St. Paul's motion for summary judgment. In addition, the Court OVERRULES plaintiffs' objection to Exhibit 7 attached to the Declaration of Susan Wimberly, and OVERRULES plaintiffs' objection to paragraph 6 of the Declaration of Mark Franke.  [Docket Nos. 109, 125]

**IT IS SO ORDERED.**

Dated: July 2, 2007

SUSAN ILLSTON
United States District Judge

11